IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNNY R. GONZALES,

       Plaintiff,

v.                                                    CV 15-456 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Johnny Gonzales applied for supplemental security income on October 6, 2010, alleging disabling conditions beginning on October 6, 2009. (Administrative Record "AR" 17, 138.) After his applications were denied at all administrative levels, Gonzales filed his Motion to Reverse and Remand for a Rehearing. (Doc. 17.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 19) and Gonzales filed a reply (Doc. 20). For the reasons explained below, I grant Gonzales's motion to remand and remand this case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past

2

relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Gonzales is a sixty-six-year-old man with an eighth grade education and a GED, with no relevant work history in the last fifteen years. (AR 30-31, 164.) Gonzales claims disability beginning on October 6, 2009, based on back pain, respiratory problems, Hepatitis C, and emotional problems. (AR 163.)

Gonzales's medical records begin on October 2, 2009, with records from the New Mexico Corrections Department ("NMCD"), where Gonzales was incarcerated through October 2010. (AR 244.) Very few records from NMCD were produced for the SSA. Eileen M. Brady, M.D., a non-examining state consulting physician, noted in her Case Analysis on March 11, 2011, that "[r]equest for records form [sic] NM Corrections were not productive." (AR 293.)

On October 2 and October 8, 2009, Gonzales was assessed with a GAF of 75 during a well-being check as a result of a prison-wide lockdown.[1] Gonzales did not request mental health services at that time. (AR 243-44.) On November 16, 2009, Gonzales reported burning in his lungs and low back pain, though his breath sounds were clear in all fields. (AR 249.) An NMCD physician assessed Gonzales with Hepatitis C, hyperlipidemia, dyspepsia, and hypertension on March 1, 2010. (AR 259.) The physician again noted that Gonzales complained of a burning sensation in the lower lobe of his left lung. (AR 260.)

Gonzales filled out a Disability Report on November 4, 2010, and indicated that his conditions included chronic back problems and severe pain, Hepatitis C, liver inflammation, burning in the lungs, emotional problems, anxiety, depression, paranoia in public, and respiratory problems. (AR 163.) Gonzales filled out a Function Report on November 18, 2010, and listed his daily activities as getting up, cleaning himself up, and cooking when he feels well enough to do so. (AR 171.) Gonzales reported that he had no problems with personal case, but does not do house or yard work because he cannot lift heavy objects or work around chemicals, and because he experiences significant pain when bending. (AR 172-74.) Gonzales's hobbies include watching television, reading, and walking when he feels up to it. (AR 175.) Gonzales reported that his conditions limit his ability to lift, squat, bend, and concentrate, but that he can pay attention and follow written or spoken instructions when his pain is not too bad. (AR 176.)

Gonzales's sister, Lucy Torres, filled out a Third Party Function Report on his behalf on November 19, 2010. (AR 179.) Torres reported that Gonzales visits his parents, makes his own

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between seventy-one and eighty is assessed when "symptoms[, if] present, . . . are transient and expectable reactions to psychosocial stressors . . . ; no more than slight impairment in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Gonzales's mental health providers used this scoring method.

food, and goes for small walks on a fairly regular basis. (AR 182.) Gonzales is able to do his own laundry and clean his mobile home. (AR 184.) Torres indicated that Gonzales spends time with others by going for car rides, playing cards and dominos, and watching movies, but that she does not know of any places that Gonzales visits on a regular basis. (AR 186.) Torres further noted that Gonzales does not have any problems getting along with others, but experiences difficulty lifting, squatting, bending, and sitting. (AR 187.)

Patrick Harrison Carroll, M.D., conducted a consultative examination of Gonzales on December 4, 2010. (AR 265.) Dr. Carroll noted that he had no medical records to review, but found that Gonzales gave an accurate history. (AR 267.) Gonzales reported low-back pain since 1985, that is worse with lifting, and said that he had a series of lumbosacral spine x-rays that showed degenerative arthritis in the L2-L3 area. (AR 265.) Gonzales also reported that he contracted Hepatitis C in approximately in 1989, but had received no treatment, and that he had a history of depression, anxiety, and paranoia, but had received no mental health treatment. (*Id.*) Gonzales did furniture work in prison, can dress and feed himself, can stand for approximately one hour at a time and between four and five hours in an eight hour period, can walk a mile on level ground, can lift thirty to forty pounds, and can sweep, mop, vacuum, cook, do dishes, shop, and climb stairs. (AR 265-66.) Gonzales's lungs were clear to auscultation. (AR 266.)

Gonzales had a spinal x-ray on December 9, 2010, that showed minor degenerative changes in the lumbar spine. (AR 269.)

Consultative psychological examiner David LaCourt, Ph.D., visited with Gonzales on January 17, 2011. (AR 275.) Dr. LaCourt found that Gonzales's recall and memory reflect an anterograde amnestic gap, apparently resulting from a reported horseback riding accident. (AR 276.) Gonzales repeatedly stated that he prefers not to be around other people, but indicated that

he thought this resulted from adjusting to life outside of prison. (*Id.*) Gonzales reported that he is usually up by five or five thirty a.m., has breakfast with his parents, does the dishes, and keeps up with current events by watching television and listening to the radio. (*Id.*) Dr. LaCourt found that Gonzales has average to low-average intellectual functioning, with a pessimistic and dysphoric mood that does not constitute a clear presentation consistent with clinical depression. Dr. LaCourt diagnosed Gonzales with an adjustment disorder, with depressed and anxious features, and social phobia. (*Id.*) Based on these diagnoses, Dr. LaCourt opined that Gonzales had mild limitations remembering and carrying out complex or detailed instructions, moderate limitations sustaining concentration or task persistence when carrying out instructions, moderate limitations working without supervision, marked limitations interacting with the public, moderate limitations interacting with supervisors or coworkers, moderate limitations adapting to changes in the workplaces, mild limitations being aware of normal hazards and reacting appropriately, and marked limitations using public transportation or traveling to unfamiliar places. (AR 276-77.)

Non-examining state agency consultant Robert Hodes, Ph.D., conducted a Psychiatric Review Technique of Gonzales's records on March 9, 2011. (AR 279.) Dr. Hodes gave little weight to Dr. LaCourt's opinion and found Gonzales to be only partially credible. (AR 291.) Dr. Hodes found that Gonzales had a medically determinable adjustment disorder that did not precisely satisfy the diagnostic criteria of Listing 12.04 and persistent irrational fear of a specific object, activity or situation, which results in a compelling desire to avoid the dreaded object, activity, or situation, consistent with a medically determinable impairment under Listing 12.06. (AR 282, 284.) However, Dr. Hodes concluded that Gonzales experiences only mild limitations maintaining social functioning and concentration, persistence, or pace, and no restriction on his

activities of daily living, leading to the conclusion that Gonzales's impairments are not severe. (AR 279, 289.)

Gonzales presented at Presbyterian Medical Services on March 23, 2012, complaining of chronic shortness of breath on exertion. (AR 302.) A chest x-ray showed interstitial findings which required further exploration. (*Id.*) On May 2, 2012, Gonzales again saw Karna Patel, M.D., at Presbyterian. (AR 299.) He continued complaining of shortness of breath and reported taking Albuterol as needed. (*Id.*) Dr. Patel assessed Gonzales with pneumoconiosis, shortness of breath, and an abnormal chest x-ray, noting that he would need lab work, pulmonary function tests, and a chest CT as soon as he could afford them. (AR 300.)

Dr. Patel referred Gonzales for thorax CT on March 5, 2013, based on an abnormal chest x-ray that showed reticulonodular densities, a history of working in uranium mines, and significant dyspnea. (AR 226.) The CT indicated pneumoconiosis, but showed no thoracic adenopathy or pleural or perdicardial effusions. (AR 228.) The CT did show trace amount of pleural thickening at the posterior lung bases and a few aortic calcifications without aneurysm. (*Id.*)

At the hearing in this matter on October 8, 2013, Gonzales testified that he has not tried to work since being released from prison because of his physical conditions. (AR 32.) Gonzales said that he was in a horseback riding accident at age nineteen that caused an L2-L3 rupture and required extended hospitalization. (AR 34.) Gonzales said that he does not like taking medication and is not taking any narcotic pain medication; he also does not take psychoactive medication because he watched his friends have very negative reactions to such medications while incarcerated. (AR 34-35.) Gonzales was diagnosed with pneumoconiosis as a result of working in uranium mines, and obtained compensation from the Department of Justice and the

Department of Labor in 2012 under the Radiation Exposure Compensation Act, and again under the Department of Labor's Occupational Illness Compensation Program. (AR 36-37.) The parties agree that this income is irrelevant. (AR 39.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

ALJ Donna Montano issued her decision on January 21, 2014. (AR 14-16.) She concluded that Gonzales had not engaged in substantial gainful activity since his application date. (AR 19.) ALJ Montano also found that Gonzales has the medically determinable impairments of back problems, Hepatitis C, respiratory problems, and a mood disorder, but that he does not suffer from a severe impairment or combination of impairments. (*Id.*) The ALJ found that Gonzales's impairments could be expected to produce the alleged symptoms, but found him only partially credible as to the intensity, persistence and limiting effects of those symptoms. (AR 20.)

The ALJ discussed treatment records from NMCD, including confirmation that Gonzales suffers from Hepatitis C, but noted that NMCD did not provide aggressive treatment for this condition, and that Gonzales first complained of burning in his lungs on November 16, 2009. (*Id.*) The ALJ then discussed Dr. Carroll's findings and stated that "Dr. Carroll found no evidence of any medical disability whatsoever," noting that this finding was supported by the minimal x-ray findings of minor degenerative changes in the lumbar spine. (AR 21.) The ALJ briefly noted Dr. Patel's treatment and the chest x-ray showing some interstitial changes in Gonzales's lungs. (*Id.*)

With respect to mental impairments, the ALJ noted that Gonzales "admitted he has not had mental health treatment" and pointed to the October 2 and October 8, 2009, records from NMCD stating that Gonzales had not requested mental health services. (*Id.*) The ALJ then

discussed Dr. LaCourt's opinion. The ALJ noted that "[t]he limitations posed by Dr. LaCourt are based on a one-time evaluation and appear to be based upon subjective complaints. Through his own statement to Dr. LaCourt, [Gonzales] believed he is still adjusting to life outside of prison and prefers not to be around other people." (*Id.*)

The ALJ then pointed out that Gonzales was able to do furniture work while incarcerated, despite his alleged impairments. (*Id.*) Additionally, the ALJ noted that there is no "revealing medical evidence from a treating provider since his incarceration with the exception of treatment in connection with his claim for compensation" for pneumoconiosis resulting from his work in the uranium mines. (*Id.*)

ALJ Montano went on to find that Gonzales had no limitation on his activities of daily living, noting that he lives alone and is able to maintain his home; no limitation in social functioning, noting that he is able to maintain relationships with his family and is able to socialize with family and friends; no limitation with concentration, persistence, or pace, noting that he does not need reminders to perform activities or go places, and is able to play card games, watch television, read, and use public transportation; and no episodes of decompensation. (AR 22.) Therefore, the ALJ concluded that Gonzales has no severe impairments and is not disabled.

### DISCUSSION

Gonzales challenges the ALJ's step-two finding of no severe impairment. The legal and factual analyses are inextricably linked in this instance.

"[A]ny error [at step two] is harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see also Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007). When the ALJ finds that a plaintiff

9

suffers from any severe impairment at step two, any additional errors in determining severe impairments at that step are harmless.

The plaintiff bears the burden of showing that his impairments are severe, that is, that they "significantly limit[] [his] ability to do basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). The burden of this showing is "de minimis." *Id.* (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The severity determination is based solely on medical factors. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). An impairment or combination of impairments significantly limits a plaintiff's ability to do basic work activities when it impinges upon, for example:

1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
2) Capacities for seeing, hearing, and speaking;
3) Understanding, carrying out, and remembering simple instructions;
4) Use of judgment;
5) Responding appropriately to supervision, co-workers and usual work situations; and
6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b); *see also Williams*, 844 F.2d at 750-51. Vocational experts have clarified that extended absences or more than one-to-two absences per month preclude individuals from maintaining competitive employment. *See, e.g.*, *Young v. Colvin*, 2014 WL 4851565, at *22 (N.D. Tex. Sept. 30, 2014) (unpublished). The ALJ should only find that the impairment or combination of impairments is not severe if they evince a slight abnormality having no more than a minimal effect on a plaintiff's ability to work. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential

evaluation process should not end with the not severe evaluation step." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).[2]

While the ALJ is not bound by Dr. LaCourt's findings, she is required to explain the weight given to his opinion. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The ALJ is to apply the factors in 20 C.F.R. § 416.927 when evaluating a medical opinion, including the length of the relationship, the nature and extent of the relationship, the degree to which the opinion is supported by relevant evidence, consistency between the opinion and the record as a whole, whether the source is a specialist in the field, and other factors. Failure to explain the weight given to Dr. LaCourt's opinion, supported by adequate reasoning, constitutes reversible legal error.

While not explicitly stating so, the ALJ discounted Dr. LaCourt's opinion in favor of non-examining Dr. Hodes's opinion. The ALJ discounted Dr. LaCourt's opinion for three reasons: the opinion was based on a one-time evaluation, the opinion was based on Gonzales's subjective reports, and Gonzales believed that he was still adjusting to life after prison. (AR 21.) The ALJ appears to overrule Dr. LaCourt's assessment of an adjustment disorder based solely on Gonzales's statement that he believed he was still adjusting, which somehow means that Gonzales could not also have an adjustment disorder. Indeed, the ALJ provides no defensible reason for completely discounting Dr. LaCourt's opinion of Gonzales's limitations.

As for the ALJ's two other reasons for rejecting Dr. LaCourt's opinion—that it was based on a one-time evaluation and that it was based on Gonzales's subjective complaints—neither provides an adequate basis for rejecting Dr. LaCourt's medical opinion. First, consultative

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

examinations are frequently one-time evaluations at the behest of the SSA, and are given less weight than treating sources but more weight than non-examining sources. *See Williams*, 844 F.2d at 757. The mere fact that a consultative examination occurred only one time is not a sufficient reason to disregard the consultative examiner's medical opinion.

The ALJ failed to adequately consider Dr. LaCourt's opinion. This constitutes reversible legal error. Because the ALJ failed to adequately consider Dr. LaCourt's opinion, her step-two finding that Gonzales does not have a severe impairment or combination of impairments is not supported by substantial evidence.

## CONCLUSION

As explained above, the ALJ failed to apply the appropriate legal standard when evaluating Dr. LaCourt's opinion, rendering her step-two finding unsupported by substantial evidence. On remand, the ALJ will engage in the appropriate analysis and, if necessary, refer Gonzales for an additional examination.

It is so ordered.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.